IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| STEPHEN CAVANAUGH, | ) | 4:14CV3062 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| HALL COUNTY DEPARTMENT OF CORRECTIONS, RUIZ, VAN, SPAR, CASTLEBERRY, CONNELLY, and REI, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Stephen Cavanaugh brings this case against Hall County, Nebraska ("Hall County"),[1] under 42 U.S.C. § 1983 for violations of his constitutional rights. The operative pleadings are Cavanaugh's Complaint (Filing No. 1) and Amended Complaint (Filing No. 12). Cavanaugh argues in his pleadings that officials of the Hall County Jail in Grand Island, Nebraska, repeatedly punished him for filing grievances by placing him in segregation. In addition, he argues he was denied access to the jail's grievance system.

---

[1] The court construes Cavanaugh's suit as being against Hall County because Cavanaugh sued the following county-employee defendants in their *official capacities* only: Director Ruiz, Assistant Director Van, Sergeant Spar, Sergeant Castleberry, Sergeant Connelly, and Sergeant Rei. A claim against an individual in his *official capacity* is, in reality, a claim against the entity that employs the official, in this case, Hall County. *See Parrish v. Luckie*, 963 F.2d 201, 203 n.1 (8th Cir. 1992) ("Suits against persons in their official capacity are just another method of filing suit against the entity. A plaintiff seeking damages in an official-capacity suit is seeking a judgment against the entity.") (internal citations omitted)).

Defendants' Answer (Filing No. 29) reflects the full and correct spellings of the official-capacity defendants' names are Fred Ruiz, Jimmy Vann, Darla Sparr, Carol Castleberry, Jason Conley, and Debb Rea. The court will direct the clerk of the court to update the court's records to reflect Defendants' full and correct names.

Cavanaugh and Hall County have filed cross-motions for summary judgment. (Filing Nos. 55 and 58.) The court has considered the pleadings, briefs, and the parties' evidence. For the reasons discussed below, the court finds Hall County is entitled to summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the court of the basis for the motion, and must identify those portions of the record that the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the non-movant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis Cnty.*, 653 F.3d 745, 751 (8th Cir. 2011). But where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

With these standards in mind, the court turns to consideration of the parties' cross-motions for summary judgment.

## FACTUAL BACKGROUND

Cavanaugh was a pretrial detainee at the Hall County Jail from July 29, 2012, until he was transferred to the custody of the State of Nebraska in September of 2013. (Filing No. 12 at CM/ECF p. 1.) At all times relevant to this action, Ruiz was the jail director, Vann was the assistant jail director, and Sparr, Castleberry, Conley, and Rea were jail sergeants. (Filing No. 29.)

Analysis of this case requires an understanding of some of the jail's polices and procedures, and its systems for processing inmate requests and inmate grievances. The jail maintains a Standard Operating Policy and Procedure Manual. The manual explicitly states that any inmate or detainee is permitted to report and file a grievance, and that no disciplinary sanction or adverse action may occur as a result of filing a grievance. (Filing No. 25-3.) The jail also maintains an Inmate/Detainee Handbook. This handbook explicitly states that no negative action or retaliation may be made against an inmate or detainee for filing a grievance. But, if a grievance is frivolous, disrespectful, contains threats, profanity, or vulgarity, it may be returned to the inmate or detainee without a response. (Filing No. 25-2 at CM/ECF pp. 28-29.)

The handbook describes a distinction between "grievances" and "inmate requests." Specifically, grievances pertain to the violation of a "right" or a "privilege" and are appealable. In contrast, inmate requests are used to pose questions about inmates' criminal sentences, charges, money, release dates, and access to jail programming and services. They may be directed to jail staff and also other county and local officials. (*See* generally Filing No. 25-2.) An inmate or detainee may face sanctions for filing an inmate request that is disrespectful, or contains threats, profanity, or vulgarity. (Filing No. 25-2 at CM/ECF p. 11.)

Both grievances and inmate requests may be submitted by general-population inmates and detainees via kiosks located in the common areas of the jail. These kiosks provide electronic transmission of inmate requests and grievances and other items of

correspondence to individuals and departments within the jail, and also to certain agencies outside the jail, such as the city police department and the clerk of the court. (Filing No. 25-2 at CM/ECF p. 11; Filing No. 56-1 at CM/ECF p. 2.) These kiosks are operated by inmates and detainees using fingerprint access. (Filing No. 56-1 at CM/ECF p. 2.)

Turning now to the facts of this case, this case concerns incidents that occurred between September 28, 2012, and September of 2013. Jail staff placed Cavanaugh in segregation on seven separate occasions during this period of time.[2] Cavanaugh claims jail officials placed him in segregation as punishment for filing grievances and they were acting in accordance with a policy or custom when they did so. The evidence shows the following with respect to these seven incidents of segregation.

**One**: Jail officials held Cavanaugh in segregation from October 25, 2012, to October 26, 2012. (Filing No. 56-2 at CM/ECF p. 1.) On October 25, 2012, hearing officers found Cavanaugh guilty of second-degree disrespect based on allegations that he had used the electronic communication system to transmit profane communication to the Grand Island Police Department (*e.g.*, "NOT CLOSED FUCKER. FUCKING ANSWER ME" and "FUCK YOU"). (Filing No. 56-5 at CM/ECF pp. 2-5.)

**Two**: Jail officials held Cavanaugh in segregation from December 10, 2012, to January 2, 2013. (Filing No. 56-2 at CM/ECF p. 1.) The evidence shows the following chronology of events related to this instance of segregation:

---

[2]Prior to September 28, 2012, Cavanaugh spent time in segregation on two occasions. First, jail staff classified Cavanaugh as a maximum-security inmate and assigned him to the segregation unit upon his arrival to the jail due to the seriousness of the criminal charges pending against him. (Filing No. 56-1 at CM/ECF p. 3.) Cavanaugh was released to non-segregation general population on August 22, 2012, but returned to the segregation unit on September 24, 2012, at his own request. (Filing No. 56-1 at CM/ECF p. 4.) Cavanaugh returned to general population on September 28, 2012, also at his own request. (Filing No. 56-1 at CM/ECF p. 4.)

- December 3, 2012: Cavanaugh called a jailer a "micro-managing son of a bitch," and he later told a sergeant he was "trying to wrap [his] head around how retarded [he was] being." (Filing No. 56-5 at CM/ECF pp. 9-10.)
- December 10, 2012: Vann ordered Cavanaugh placed in segregation pending his disciplinary hearing after he discovered Cavanaugh had been using expletives and was being disrespectful in his inmate requests. (Filing No. 56-5 at CM/ECF p. 11.)
- December 11, 2012: Cavanaugh deliberately spilled food on his cell floor, refused to clean it, and then refused to leave the cell so his cell could be cleaned. (Filing No. 56-5 at CM/ECF pp. 12-24.)
- December 12, 2012: Based on the above-mentioned events, jail officials issued a notice of disciplinary hearing alleging Cavanaugh had committed the following rule violations: (1) Refusing a Direct Order, First Degree; (2) Tampering with Security Features or Equipment, (3) Obstruction of Corrections Operation, First Degree, and (4) Failure to Maintain Sanitation. (Filing No. 56-5 at CM/ECF p. 8.)
- December 14, 2012: Hearing officers found Cavanaugh guilty of all four rule violations and sentenced Cavanaugh to 10 days of disciplinary segregation and 20 days of cell restriction. (Filing No. 56-5 at CM/ECF p. 25.)

**Three**: Jail officials held Cavanaugh in segregation from January 29, 2013, to February 20, 2013. (Filing No. 56-2 at CM/ECF pp. 1-2.) This third instance of segregation is the only one that specifically relates to Cavanaugh's filing of a grievance. The evidence shows the following chronology of events related to this instance of segregation:

- January 26, 2013: Cavanaugh sent the following inmate request to the jail's mental health staff: "MZ. PEREZ. WHILE YOU WERE ON YOUR MEDICAL LEAVE MISS REBECCA WAS WORKING TO GET AHOLD [sic] OF TWO FRIENDS OF MINE SO SHE COULD LET THEM KNOW WHERE I AM AND GIVE THEM THE INFORMATION THEYD [sic] NEED TO WRITE ME. DO

5

- YOU KNOW IF SHE EVER FOUND THEM OR GOT ANY ADDRESSES I CAN USE TO WRITE THEM?" (Filing No. 56-6 at CM/ECF p. 45.)
- January 29, 2013: Vann responded to Cavanaugh's inmate request, stating: "Mental Health staff are not in place to contact friends of inmates for personal writing issues." (Filing No. 59 at CM/ECF p. 70.) Later on this same date, Cavanaugh submitted a grievance, which read: "HIS WORSHIPFULLNESS MR VAN MALICIOUSLY INTERCEPTED A MESSAGE INTENDED FOR A MENTAL HEALTH PROFESSIONAL. THIS WAS OBVIOUSLY DONE OUT OF SPITE AND IN RETALIATION. HE HAS NO RIGHT TO KEEP ME FROM SPEAKING WITH MENTAL HEALTH DESPITE HIS CLAIMED DIVINE STATUS." (Filing No. 56-6 at CM/ECF p. 32.) Then, on this same date, jail officials deemed Cavanaugh's grievance "disrespectful" and rehoused him to the segregation unit pending a disciplinary hearing. (Filing No. 56-5 at CM/ECF p. 32.) While being escorted to segregation, Cavanaugh stated he was "'only in there because of piece of shit Vann.'" (Filing No. 56-5 at CM/ECF p. 33.) Based on these events, jail officials issued a notice of disciplinary hearing alleging Cavanaugh had committed the following rule violations: (1) Disrespect, Second Degree, (2) Obstruction of a Corrections Operation, Second Degree, and (3) Refusing a Direct Order, Third Degree. (Filing No. 56-5 at CM/ECF p. 31.)
- January 31, 2013, hearing officers found Cavanaugh guilty of the three rule violations and sentenced him to remain in the segregation unit under administrative segregation pending review from classification. (Filing No. 56-5 at CM/ECF p. 34.)

**Four**: Jail officials held Cavanaugh in segregation from February 28, 2013, to March 26, 2013. (Filing No. 56-2 at CM/ECF p. 2.) On February 28, 2013, Cavanaugh began serving a 46-hour cell restriction based on a jailer's report that he made a statement about the sexual orientation of the unit officer and used the emergency call button in an non-emergency situation. (Filing No. 56-5 at CM/ECF p. 37.) While serving this cell restriction, Cavanaugh dumped his food tray, refused orders, and repeatedly pressed his emergency call button. (Filing No. 56-5 at CM/ECF pp. 39-43.)

6

Based on these incidents, on March 6, 2013, hearing officers found Cavanaugh guilty of the following: (1) Refusing a Direct Order, First Degree, (2) Tampering with Security Features or Equipment, (3) Habitual Minor, (4) Obstruction of a Corrections Officer, First Degree, (5) Refusing a Direct Order, Second Degree, and (6) Failure to Maintain Sanitation. They sentenced him to 10 days of disciplinary segregation followed by 20 days of cell restriction. (Filing No. 56-5 at CM/ECF p. 44.)

**Five**: Jail officials held Cavanaugh in segregation from June 19, 2013, to July 12, 2013. (Filing No. 56-2 at CM/ECF p. 2.) On June 27, 2013, hearing officers found Cavanaugh guilty of first-degree disrespect and first-degree obstruction of corrections operations based on allegations that Cavanaugh had yelled "Fucking Faggots" toward a group of jail staff. (Filing No. 56-5 at CM/ECF pp. 73-78.) They sentenced Cavanaugh to five days of disciplinary segregation and 10 days of cell restriction. (Filing No. 56-5 at CM/ECF p. 78.)

**Six**: Jail officials held Cavanaugh in segregation from July 16, 2013, to July 18, 2013. (Filing No. 56-2 at CM/ECF p. 2.) On July 18, 2013, hearing officers found Cavanaugh guilty of third-degree assault based on allegations that he had assaulted another inmate. They sentenced Cavanaugh to three days of disciplinary segregation with credit for time served and a five-day loss of commissary. (Filing No. 56-5 at CM/ECF p. 83.)

**Seven**: Jail officials held Cavanaugh in segregation from July 30, 2013, to August 2, 2013. (Filing No. 56-2 at CM/ECF p. 2.) On August 1, 2013, hearing officers found Cavanaugh guilty of first-degree disrespect and second-degree refusing a direct order based on allegations that he had commented about a female jailer's physical appearance and physical features and continued to do so after jail staff directed him to stop. (Filing No. 56-5 at CM/ECF pp. 86-88.) They sentenced Cavanaugh to five days of cell restriction. (Filing No. 56-5 at CM/ECF p. 88.)

Before turning to a discussion of Cavanaugh's claims, the court notes the following fact is disputed in this case: Cavanaugh maintains that, on January 30, 2013, Ruiz approached him in segregation and informed him he would remain in segregation for the duration of his incarceration if he continued to file grievances. (Filing No. 59 at CM/ECF p. 4.) Ruiz disputes having made this statement. (Filing No. 67-1 at CM/ECF p. 2.) The evidence reflects Cavanaugh filed approximately 70 grievances prior to January 30, 2013, and none after this date. (Filing No. 56-6 at CM/ECF pp. 15-33; Filing No. 56-7.)

## DISCUSSION

Cavanaugh claims Hall County officials placed him in segregation for filing grievances, and he was denied access to the grievance system while incarcerated at the Hall County Jail. (Filing No. 1; Filing No. 12.) Cavanaugh correctly argues that the First Amendment right to petition for redress of grievances includes redress under established prison grievance procedures, *Sprouse v. Babcock*, 870 F.2d 450, 451-52 (8th Cir. 1989), and the filing of a disciplinary charge becomes actionable if done in retaliation for an inmate's filing of a grievance. *Id.* But, the question presented in this case is whether *Hall County* may be held liable based on the incidents described in Cavanaugh's Complaint and Amended Complaint.

When a § 1983 claim is made against a municipality, the court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120. "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality

is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-480 (1986)) (emphasis in original).

A plaintiff seeking to hold a municipality liable under § 1983 must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Id.* at 403-04. "Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Id.* at 404.

The evidence does not support a conclusion that Hall County had a policy of placing Cavanaugh in segregation in retaliation for, or in response to, filing grievances. Indeed, jail policy on the issue is clear. Both the jail's inmate handbook and the jail's written procedures explicitly state that no disciplinary sanction or adverse action may occur as a result of filing a grievance. (Filing No. 25-2 and Filing No. 25-3.)

There is also no evidence that Hall County, through its officials, had a custom of placing Cavanaugh in segregation in retaliation for filing grievances. The evidence reflects Cavanagh was placed in segregation for a wide range of misbehavior on his part. Of the numerous times Cavanaugh was placed in segregation, only one pertained to his submission of an item submitted as "a grievance." This grievance, like much of his other verbal and written communication with staff, was mocking and disrespectful. Jail staff placed Cavanaugh in segregation pending a hearing to address charges of disrespect and other rule violations. This single instance does not suggest any widespread practice within the municipality for which the municipality could be found liable.

Separately, even assuming Ruiz informed Cavanaugh that he would remain in segregation for the duration of his incarceration if he continued to file grievances, the

court cannot find Hall County liable for the statement alone. Where a plaintiff seeks to hold a municipality liable for a "single decision by [a] municipal policymaker[]," *Pembaur*, 475 U.S. at 480, the plaintiff must show that the official had final policymaking power, *see Praprotnik*, 485 U.S. at 123 (explaining that "only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability").

Here, the critical inquiry is not whether Ruiz, as jail director, had final policymaking authority; rather, the inquiry is whether Ruiz was a final policymaker with respect to the particular conduct challenged in this lawsuit. *See Roe v. City of Waterbury*, 542 F.3d 31, 37 (2nd Cir. 2008). Defendants argue he is not because Nebraska state law cloaks the Hall County Board of Corrections with overall management of the jail and, as director of the jail, Ruiz answers to this county board. (Filing No. 25-1 at CM/ECF p. 3; Filing No. 25-2 at CM/ECF p. 3.) *See* Neb. Rev. Stat. §§ 23-2801 to 23-2086.

The jail's policy explicitly prohibits disciplinary sanction or adverse action in response to filing a grievance. Ruiz's threat to Cavanaugh, if acted upon, would have been in direct violation of this policy. In other words, Ruiz's conduct was forbidden by existing, applicable county policy. Ruiz's alleged deliberate departure from municipal policy cannot be imputed to the county itself under the facts presented in this case. *See Bernini v. City of St. Paul*, 665 F.3d 997 (8th Cir. 2012) (actions of senior commander of city policy department during mass arrest of protestors alleged to have been in violation of First Amendment could not bind the city because commander was not the final policymaker for the city, but only had discretion in the exercise of his particular functions, with other layers of policymaking authority above his rank prescribed by city ordinance.). In short, there is no evidence in this case that Hall County was the moving force behind any of Cavanaugh's alleged injuries. Thus, Cavanaugh's claims against the county fail and the county is entitled to summary judgment.

**MOTION TO RECONSIDER**

Late in the progression of this case, Cavanaugh moved to amend his pleadings to add individual-capacity claims against Ruiz, Vann, and official and individual capacity claims against a new defendant. The court denied Cavanaugh's request to amend because Cavanaugh did not file a proposed amended complaint in accordance with this court's local rules. (Filing No. 64.) Cavanaugh now moves the court to reconsider its denial of leave to amend. (Filing No. 71.) But, once again, Cavanaugh has filed no proposed amended complaint. In addition, he has shown no manifest error in the court's prior ruling denying him leave to amend and denying him leave to conduct further discovery. Therefore, the court will deny Cavanaugh's Motion to Reconsider (Filing No. 70).

## MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff seeks the appointment of counsel. (Filing No. 52.) The court cannot routinely appoint counsel in civil cases. In *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996), the Eighth Circuit Court of Appeals explained that "[i]ndigent civil litigants do not have a constitutional or statutory right to appointed counsel. The trial court has broad discretion to decide whether both the plaintiff and the court will benefit from the appointment of counsel[.]" *Id.* (internal citation and quotation marks omitted). No such benefit is apparent here.

## STATE-LAW CLAIMS

It is unclear to what extent Cavanaugh intended to raise claims under state law. Regardless, the court declines to exercise supplemental jurisdiction over any remaining state law claims because it will dismiss all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3).

IT IS THEREFORE ORDERED that:

11

1. Defendants' Motion for Summary Judgment (Filing No. 55) is granted. Cavanaugh's claims for equitable and monetary relief against Defendants in their official capacities under § 1983 are dismissed with prejudice.

2. Cavanaugh's Motions seeking summary judgment (Filing No. 58), reconsideration of the court's prior order (Filing No. 70), and appointment of counsel (Filing No. 52) are denied.

3. The clerk of the court is directed to update the court's records to reflect the full and correct spelling of Defendants' names: Fred Ruiz, Jimmy Vann, Darla Sparr, Carol Castleberry, Jason Conley, and Debb Rea.

4. The court will enter judgment by a separate document.

DATED this 19th day of October, 2015.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.